Slip Op. 21-98

# UNITED STATES COURT OF INTERNATIONAL TRADE

CHANGZHOU TRINA SOLAR ENERGY CO., LTD. ET AL.,

    Plaintiffs and Consolidated Plaintiffs,

and

JA SOLAR TECHNOLOGY YANGZHOU CO., LTD. ET AL.,

    Plaintiff-Intervenors,

v.

UNITED STATES,

    Defendant,

and

SOLARWORLD AMERICAS, INC. ET AL.,

    Defendant-Intervenor and Consolidated Defendant-Intervenors.

Before: Claire R. Kelly, Judge

Consol. Court No. 18-00176

**OPINION AND ORDER**

[Sustaining the U.S. Department of Commerce's second remand redetermination in the fourth administrative review of the antidumping duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules.]

Dated: August 10, 2021

Robert G. Gosselink and Jonathan M. Freed, Trade Pacific, PLLC, of Washington, DC, for plaintiffs.

Jeffrey S. Grimson, Sarah M. Wyss, and Bryan P. Cenko, Mowry & Grimson, PLLC, of Washington, DC, for consolidated plaintiffs and plaintiff-intervenors JA Solar Technology Yangzhou Co., Ltd., Shanghai JA Solar Technology Co., Ltd. and JingAo Solar Co., Ltd.

Tara K. Hogan, Assistant Director, and Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. Also on the brief was Brian M. Boynton, Acting Assistant Attorney General, and Jeanne E. Davidson, Director. Of Counsel on the brief was Leslie M. Lewis, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") remand redetermination filed pursuant to the court's order in Changzhou Trina Solar Energy Co. v. United States, 45 CIT __, __, 492 F. Supp. 3d 1322 (Jan. 4, 2021) ("Changzhou II"). See Final Results of Remand Redetermination Pursuant to Court Remand, Apr. 5, 2021, ECF No. 105-1 ("Second Remand Results"). In Changzhou II, the court remanded Commerce's decision to value Trina's[1] international freight expenses using Maersk Line ("Maersk") rate quotes. Chanzhou II, 45 CIT at __, 492 F. Supp. 3d at 1332; see also Changzhou Trina Solar Energy Co. v. United States, 44 CIT __, __, 450 F. Supp. 3d 1301, 1312–13 (May 13, 2020) ("Changzhou I").

On remand, Commerce abandons its reliance on Maersk data to value Trina's international freight expenses, and instead uses data from Xenata XS ("Xenata"). See

---

[1] Changzhou Trina Solar Energy Co., Ltd., Trina Solar (Changzhou) Science & Technology Co., Ltd., Yancheng Trina Solar Energy Technology Co., Ltd., Changzhou Trina Solar Yabang Energy Co., Ltd., Turpan Trina Solar Energy Co., Ltd., Hubei Trina Solar Energy Co., Ltd., and Trina Solar (Hefei) Science & Technology Co., Ltd are referred to, collectively, as "Trina."

Second Remand Results at 6. Both Trina and consolidated plaintiffs and plaintiff-intervenors JA Solar Technology Yangzhou Co., Ltd., Shanghai JA Solar Technology Co., Ltd., and JingAo Solar Co., Ltd. (collectively, "JA Solar") (Trina and JA Solar are collectively referred to as "Plaintiff") submit comments agreeing with the Second Remand Results. See Plt. Trina's Cmts. on Final Results of Remand Redetermination, May 5, 2021, ECF No. 108 ("Trina Br."); Cmts. On Final Results of Remand Redetermination of [JA Solar], May 5, 2021, ECF No. 107 ("JA Solar Br."). Defendant United States requests that the court sustain the Second Remand Results. See Def.'s Request to Sustain Remand Redetermination, June 3, 2021, ECF No. 110 ("Def. Br."). For the following reasons, the court sustains Commerce's Second Remand Results.

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its previous opinions ordering remand to Commerce, and recounts only those facts relevant to the court's review of the Second Remand Results. See Changzhou II, 45 CIT at __, 492 F. Supp. 3d at 1325–32; see also Changzhou I, 44 CIT at __, 450 F. Supp. 3d at 1304–07, 1312–13.

On July 27, 2018, Commerce published its final determination in the fourth administrative review of the antidumping duty ("ADD") order covering crystalline silicon photovoltaic cells, whether or not assembled into modules ("solar cells" or "solar panels"), from the People's Republic of China ("China"). See Crystalline Silicon

Photovoltaic Cells, Whether or Not Assembled Into Modules, From [China], 83 Fed. Reg. 35,616 (Dep't Commerce July 27, 2018) (final results of [ADD] admin. review and final determination of no shipments; 2015–2016) ("Final Results") and accompanying Issues and Decisions Memo., A-570-979, (July 11, 2018), ECF No. 36-5 ("Final Decision Memo").  In Changzhou I, the court held that Commerce's decision to use Maersk data in calculating Trina's international freight expenses was unsupported by substantial evidence because record evidence contradicted Commerce's finding that handling charges could be removed from the Maersk data but not the Xeneta data and remanded for Commerce to further explain or reconsider its determination that the Maersk data is more specific than the Xeneta data.[2]  Changzhou I, 44 CIT at __, 450 F. Supp. 3d at 1313.  On remand, Commerce continued to use Maersk data to calculate Trina's international freight expenses.  See Final Results of Remand Redetermination, p. 4–8, Aug. 7, 2020, ECF No. 91-1 ("First Remand Results").  Commerce explained that it continued to use Maersk data because although both the Maersk and Xeneta data properly excluded brokerage and handling charges, Maersk specifically offered containers for shipping electronics, while Xeneta's rates did not distinguish "between regular shipments, hazardous shipments, and shipments that require refrigeration."  Id. at 5–6.

---

[2] Commerce initially determined the Maersk data was better than the Xeneta data because Maersk data was adjustable to exclude brokerage and handling charges.  Final Decision Memo at 30.  Commerce found that the Xeneta data was not adjustable and, if used, would lead to double counting for these charges.  Id.

In Changzhou II, the court again held that Commerce's decision to calculate Trina's international freight expense using Maersk data was unsupported by substantial evidence because the record lacked evidence to support the assumption that electronic goods are shipped in different types of containers than any other non-hazardous and non-refrigerated goods. Changzhou II, 45 CIT at __, 492 F. Supp. 3d at 1328. The court further held that Commerce's conclusion that the Maersk data, but not the Xeneta data, excluded hazardous and refrigerated goods from the price was unsupported by record evidence. Id. at 1329. The court remanded to Commerce for further explanation, specifically identifying several factors that detracted from Commerce's determination that the Maersk data was the best available information to calculate Trina's international freight costs. Id. at 1329–32. The court noted that Commerce did not include route specificity in its analysis even though the record indicated that the cost of freight depended not only on the type of container but also the route. Id. at 1329–30. The court also remanded for further explanation of the comparative representativeness of the Maersk and Xeneta data sets, observing that the Maersk data was comprised of only 32 price quotes from a few days during the period of review ("POR"), with nearly half of those quotes on one day, while the Xeneta data covered the entire POR and was based on several hundred thousand rates per month. Id. at 1330. Finally, the court remanded to Commerce for further explanation of its assumption that Xeneta's rates included prices for hazardous and refrigerated

Consol. Court No. 18-00176 Page 6

goods while Maersk's rates did not, as one would expect such shipments to be more expensive and Xeneta's prices were far lower than Maersk's. Id. at 1331–32.

On remand, Commerce determines that Xeneta's data is the best available information to value Trina's international freight costs. Second Remand Results at 6–8. All parties request that the court sustain Commerce's findings. See Trina Br. at 2; JA Solar Br. at 1–3; Def. Br. at 1–2.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018)[3] and 28 U.S.C. § 1581(c) (2018), which grant the Court authority to review actions contesting the final determination in an administrative review of an ADD order. The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008).

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

## DISCUSSION

All parties ask the court to sustain Commerce's Second Remand Results. See Trina Br. at 2; JA Solar Br. at 1–3; Def. Br. at 1–2. For the following reasons, the court sustains the Second Remand Results as supported by substantial evidence and otherwise in accordance with the law.

When subject merchandise is exported from a nonmarket economy ("NME") country, Commerce calculates normal value of entries by using data from a surrogate, market economy country ("surrogate country") at a comparable level of economic development to value the factors utilized to produce the subject merchandise "FOPs"). 19 U.S.C. § 1677b(c)(1). Commerce uses "the best available information" to value the FOPs, id., and has discretion to determine what constitutes the best available information. QVD Food Co. v. United States, 658 F.3d 1318, 1323 (Fed. Cir. 2011). Commerce generally selects surrogate values that are publicly available, product specific, reflect a broad market average, and are contemporaneous with the POR. Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1386 (Fed. Cir. 2014); see also Import Admin., U.S. Dep't Commerce, Non-Market Economy Surrogate Country Selection Process, Policy Bulletin 04.1 (2004), available at https://enforcement.trade.gov/policy/bull04-1.html (last visited Aug. 4, 2021). Because China has an NME, when calculating Trina's dumping margin, Commerce determined the normal value of Trina's entries of subject merchandise by using data

Consol. Court No. 18-00176                                                                                      Page 8

from a surrogate country to value Trina's FOPs, including international freight costs. See Final Decision Memo at 27–32.

In the Second Remand Results, Commerce notes that the record does not contain any documentation supporting the conclusion that rates for shipping electronic goods and other nonhazardous and nonrefrigerated goods differ. Second Remand Results at 6. Commerce further states that it has no additional evidence to support the conclusion that the Maersk data exclude rates for shipping hazardous and refrigerated goods while the Xeneta data do not. Id. Commerce concludes that "the Maersk and Xeneta datasets equally satisfy Commerce's criteria of tax exclusivity, contemporaneity, and public availability." Id. However, Commerce finds that the Xeneta data is more specific to the shipping routes used by Trina and represents a broader market average than the Maesk data. Id. In support of these findings, Commerce notes that the Xeneta rates cover all the freight routes used by Trina, while the Maersk rates only cover approximately 30% of the routes. Id. Commerce further states that the Xeneta data "includes thousands of actual shipments covering every day of the POR while the Maersk data comprise 32 price quotes, with 15 of the quotes from only one day of the POR." Id. Therefore, Commerce concludes that the Xeneta data is the best available information with which to value Trina's international freight costs. Id. at 6–7.

Commerce's analysis and decision to use the Xeneta data are reasonable, supported by substantial evidence, and in accordance with law. The record supports

Commerce's findings that the Xeneta data is more representative than the Maersk data and covered all of Trina's routes. See also Changzhou II, 45 CIT at \_\_, 492 F. Supp. 3d at 1329–31. Likewise, Commerce's decision to stop relying on any purported differences in the rates for shipping electronic goods and other nonhazardous and nonrefrigerated goods is reasonable because there is no record evidence that shows any such differences in prices.

All parties agree with Commerce's determinations in the Second Remand Results and request that the Second Remand Results be sustained. See Trina Br. at 2; JA Solar Br. at 1–3; Def. Br. at 1–2. Commerce's Second Remand Results are supported by substantial evidence and in accordance with law and are sustained.

## CONCLUSION

For the foregoing reasons, Commerce's Second Remand Results are supported by substantial evidence and comply with the court's order in Changzhou II and are therefore sustained. Judgment will enter accordingly.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: August 10, 2021
New York, New York